**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jason Parrish, | No. CV-17-08249-PCT-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Jason Parrish's Applications for Supplemental Security Income Benefits and Disability Insurance Benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 13, "Pl.'s Br."), Defendant Social Security Administration Commissioner's Opposition (Doc. 14, "Def.'s Br."), and Plaintiff's Reply (Doc. 15, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 12, R.) and now reverses the Administrative Law Judge's decision (R. at 17–35) as upheld by the Appeals Council (R. at 1–6).

**I.   BACKGROUND**

Plaintiff filed applications for Supplemental Security Income Benefits and Disability Insurance Benefits on April 4, 2014 for a period of disability beginning May 15, 2012. (R. at 21.) Plaintiff's claim was denied initially on August 6, 2014 (R. at 21), and on reconsideration on December 18, 2014 (R. at 21). Plaintiff then testified at a video hearing

held before an Administrative Law Judge ("ALJ") on May 23, 2016. (R. at 17–35.) On July 29, 2016, the ALJ denied Plaintiff's Application. (R. at 35.) On September 20, 2017, the Appeals Council denied a request for review of the ALJ's decision. (R. at 1–6.) On November 20, 2017, Plaintiff filed this action seeking judicial review of the denial.

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following alleged impairments: chronic obstructive pulmonary disease and emphysema; hearing loss; degenerative disease of the cervical spine; and an anxiety disorder. (R. at 24.)

Ultimately, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404." (R. at 24.) The ALJ then found that Plaintiff has the residual functional capacity ("RFC") to "perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with certain exceptions." (R. at 26.)

## II.  LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002)

(citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III. ANALYSIS

Plaintiff raises three arguments for the Court's consideration: (1) the ALJ erred by failing to take into account Plaintiff's manipulative limitations; (2) the ALJ erred by failing to consider Plaintiff's connective tissue disorder; and (3) the ALJ erred by discounting Plaintiff's symptom testimony. (Pl.'s Br. at 2.)

**A. The ALJ Erred by Discrediting Nurse Practitioner Hanks's Opinion**

Plaintiff raises the argument that the ALJ erred by refusing to consider Plaintiff's connective tissue disorder. (Pl.'s Br. at 9.) The ALJ's finding on Plaintiff's disorder was based on discrediting the opinion of Nurse Practitioner Deborah Hanks. (R. at 31–32.) Hanks opined that Plaintiff has Lupus, which "causes chronic pain in joints." (R. at 504.) This finding was supported by laboratory testing "indicating a positive ANA result and high Sjogren's Anti-SSA-B," yet the ALJ found that "these results on their own are not sufficient to establish a conclusive diagnosis, particularly a diagnosis by [a] non-medically acceptable primary care provider." (R. at 32.) Because the ALJ's rejection of Hanks's medical opinion was her justification for refusing to consider Plaintiff's connective tissue disorder or its effects on his manipulative abilities, the Court construes Plaintiff's argument as an assertion that the ALJ erred in discrediting Hanks's opinion.

The ALJ discredited Hanks's opinion in part because she is a nurse practitioner, and thus not an "acceptable medical source" per a section of the Federal Code of Regulations in effect at the time Plaintiff filed his disability claim. 20 C.F.R. § 404.1513(a) (2013).[1] Under this pre-2017 version, a nurse practitioner falls under subsection (d)(1) for "other sources" who are "[m]edical sources not listed in paragraph (a) of this section." 20 C.F.R. § 404.1513(d)(1) (2013). But section 404.1527, also in force at the time of Plaintiff's application, instructs that,

> [d]epending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an acceptable medical source . . . may outweigh the medical opinion of an acceptable medical source, including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has

---

[1] This section was amended in 2017. In the new provision, 20 C.F.R. § 404.151(a)(2) (2017), there are two different definitions of "medical opinion." For claims filed before March 27, 2017, "medical opinion" is defined by the 2013 version, which contains the definition of "acceptable medical sources." For claims filed after March 27, 2017, "[a] medical opinion is a statement from a medical source" and does not exclude statements from nurse practitioners.

seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole.

20 C.F.R. § 404.1527(f)(1)[2]

Here, the ALJ erred by affording little weight to Hanks's opinion. (R. at 31.) Given that Hanks was Plaintiff's primary care provider, she presumably had a more consistent treating relationship with him than his other physicians.[3] Further, Hanks's diagnosis is consistent with clinical test results showing that Plaintiff had "a positive ANA result and high Sjogren's Anti-SSA-B." (R. at 32.) Lastly, the ALJ did not point to any testimony from Plaintiff's other physicians that contradicts Hanks's diagnosis. As Plaintiff points out, his treating neurologist hypothesized that Plaintiff's pain could be "a situation of myofascial pain that is real but difficult to characterize." (R. at 446.) Myofascial pain is pain in the fascia, which is the primary characteristic of Lupus. (Pl.'s Br. at 9.)

An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester*, 81 F. 3d at 830-31). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* Here, even if Hanks's opinion was contradicted, the ALJ failed to provide legitimate and specific reasons to discredit her testimony, instead discounting it on the grounds that Hanks is a non-acceptable medical source. Regardless of Hanks's status as a nurse practitioner, it was error for the ALJ to discredit testimony that was based on a treating relationship with Plaintiff and supported by clinical evidence without identifying specific and legitimate reasons to do so.

---

[2] This section has since been amended, but still applies to all claims filed before March 27, 2017. 20 C.F.R. § 404.1527.

[3] The ALJ notes that Hanks "had a limited treating relationship with [Plaintiff]." (R. at 31.) Indeed, Hanks only began treating Plaintiff in "early 2013." (R. at 328.) But the ALJ does not note how long any of Plaintiff's other physicians have been treating him. And "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

### B. The ALJ Must Reevaluate Plaintiff's Symptom Testimony in Light of Nurse Practitioner Hanks's Properly Credited Opinion

In Plaintiff's brief, he lists as his first argument that the ALJ erred by failing to account for his manipulative limitations because the ALJ "found 'no evidence to support [Plaintiff's] testimony [that he] lost all feeling in the right arm and drops things—and falls—all the time.'" (Pl.'s Br. at 8 (citing R. at 30).) The Court construes this as an argument that the ALJ erred in rejecting Plaintiff's testimony about his manipulative limitations without providing clear and convincing reasons to do so. Thus, Plaintiff's first argument is the same as his third—that the ALJ erred in partially discounting Plaintiff's symptom testimony.

While credibility is the province of the ALJ, an adverse credibility determination requires the ALJ to provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citing *Smolen*, 80 F.3d at 1281)). Here, the ALJ found "no evidence to support the claimant's testimony [that he] lost all feeling in the right arm and drops things—and falls—all the time." (R. at 30.) The ALJ also did "not find any manipulative limitations despite the claimant's testimony . . . that he does not have feeling in his right arm and has had decreased reflexes throughout." (R. at 29.) Given the Court's finding that the ALJ erred by discrediting Nurse Practitioner Hanks's testimony that Plaintiff suffers from Lupus, Plaintiff's statements must be reevaluated in light of Hanks's opinion that Lupus could result in joint pain, and consequently, manipulative limitations. On remand, in order to discredit Plaintiff's symptom and pain testimony, the ALJ must provide clear and convincing reasons to do so in the face of Hanks's medical opinion.

### IV. CONCLUSION

The ALJ erred in discrediting the medical opinion of Nurse Practitioner Hanks. Based on the Court's Order to that effect, the ALJ must reevaluate Plaintiff's testimony regarding his pain and manipulative limitations. Thus, the Court remands for rehearing so

that Plaintiff may be assessed according to his proper limitations. *See Triechler v. Comm'r. of Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014) (noting that while a district court may reverse an ALJ's decision and instruct the SSA to award benefits, "a Social Security case should usually be remanded to remedy defects in the administrative proceeding") (citing *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014)).

**IT IS THEREFORE ORDERED** reversing the July 29, 2016 decision of the Administrative Law Judge (R. at 17–35), as upheld by the Appeals Council on September 20, 2017 (R. at 1–6).

**IT IS FURTHER ORDERED** remanding this matter for further consideration consistent with this Order, which will include crediting the opinion of Nurse Practitioner Hanks, reassessing the credibility of Plaintiff's testimony, and adjusting the residual functional capacity presented to a vocational expert as necessary.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and terminate this matter.

Dated this 25th day of March, 2019.

Honorable John J. Tuchi
United States District Judge